| | |
|---|---|
| 1 | MARC E. MAYER (SBN 190969) |
|   |    mem@msk.com |
| 2 | JAMES D. BERKLEY (SBN 347919) |
|   |    jdb@msk.com |
| 3 | MITCHELL SILBERBERG & KNUPP LLP |
|   | 2049 Century Park East, 18th Floor |
| 4 | Los Angeles, CA 90067-3120 |
|   | Telephone: (310) 312-200 |
| 5 | Facsimile: (310) 312-3100 |
| 6 | MARISSA B. LEWIS (*pro hac vice*) |
|   |    mbl@msk.com |
| 7 | MITCHELL SILBERBERG & KNUPP LLP |
|   | 437 Madison Ave., 25th Floor |
| 8 | New York, NY 10022 |
|   | Telephone: (212) 509-3900 |
| 9 | Facsimile: (212) 509-7239 |
| 10 | Attorneys for Plaintiff |
|    | Licensing IP International S.à r.l. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LICENSING IP INTERNATIONAL S.À R.L., | CASE NO. 4:24-CV-02800-JST |
| Plaintiff, | Judge: Hon. Jon S. Tigar |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS** |
| MYDIRTYHOBBY.TO, a domain name; MDH.TO, a domain name; WATCHMDH.TO, a domain name; and DOES 1-10, inclusive, | [Declaration of Marissa B. Lewis and (Proposed) Order filed concurrently herewith] |
| Defendants. | Date:    January 16, 2025 |
| | Time:    2:00 p.m. |
| | Location: Courtroom 6 |
| | Filed May 9, 2024 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 16, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, Plaintiff Licensing IP International S.à r.l. ("Plaintiff") shall and hereby does move this Court for entry of a default judgment against the domain names <mydirtyhobby.to>, <mdh.to>, and <watchmdh.to> (collectively, the "Disputed Domain Names") pursuant to Fed. R. Civ. P. 55(b)(2) and an order directing the Disputed Domain Names to be transferred to Plaintiff.

This Motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Marissa B. Lewis dated December 4, 2024 and the exhibits attached thereto, the pleadings and orders in the Court's files for this case, any matters on which the Court may or must take judicial notice and/or that are incorporated by reference via the pleadings, any reply that is filed in support of this Motion, any argument presented at the hearing on this Motion, and any other matters the Court deems proper.

DATED: December 4, 2024

MARC E. MAYER
JAMES D. BERKLEY
MARISSA B. LEWIS (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Marissa B. Lewis*
   Marissa B. Lewis
   Attorneys for Plaintiff
   Licensing IP International S.à r.l.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................6

II. FACTUAL BACKGROUND ..............................................................................................6

    A. Plaintiff and the MDH® Trademarks. ....................................................................6

    B. The Disputed Domain Names. ................................................................................7

    C. Procedural History. .................................................................................................7

IV. LEGAL STANDARD FOR DEFAULT JUDGMENT .......................................................8

V. THE COURT SHOULD ENTER A DEFAULT JUDGMENT ..........................................8

    A. The Threshold Requirements for Entry of a Default Judgment are Met. ................8

        1. The Court Has Subject Matter Jurisdiction. ................................................8

        2. The Court Has *In Rem* Jurisdiction. ............................................................9

        3. Plaintiff Has Effectuated Service of Process. ............................................10

    B. All of The *Eitel* Factors Weigh In Favor of Granting a Default Judgment. ...........10

        1. Possibility of Prejudice to Plaintiff. ............................................................10

        2. Merits of Plaintiff's Claims and Sufficiency of Amended Complaint. ......10

        3. Amount of Money at Stake. .......................................................................12

        4. Possibility of a Dispute Concerning Material Facts. .................................13

        5. Possibility of Excusable Neglect. ..............................................................13

        6. Policy for Deciding on the Merits. .............................................................14

VI. THE COURT SHOULD ORDER THE TRANSFER OF THE DISPUTED DOMAIN NAMES TO PLAINTIFF, ALONG WITH THE RELATED DOMAIN NAMES ..........14

VII. CONCLUSION ..................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*9349-9176 Quebec Inc. v. manyvids.to*,
   2019 WL 1095821, at *2 (N.D. Cal. Jan. 14, 2019), *report and recommendation adopted*, 2019 WL 1095795 (N.D. Cal. Feb. 12, 2019) .............................................................. 8

*9349-9176 Quebec Inc. v. manyvids.to*,
   2019 WL 1095821 (N.D. Cal. Jan. 14, 2019) ........................................... 9, 10, 12, 13, 14, 15

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980) ................................................................................................. 8

*Arroyo v. Huskies Owner LLC*,
   2021 WL 2711736, at *2 (N.D. Cal. July 1, 2021) .................................................................. 6

*beIN Media Grp. LLC v. bein.ae*,
   2019 WL 1129153 (S.D. Cal. Mar. 11, 2019) .......................................................................... 9

*Bosley Med. Inst., Inc. v. Kremer*,
   403 F.3d 672 (9th Cir. 2005) ................................................................................................. 11

*Coca-Cola Co. v. Purdy*,
   382 F.3d 774 (8th Cir. 2004) ............................................................................................ 11, 12

*Denso Corp. v. Domain Name denso.com*,
   2014 WL 7208488 (N.D. Cal. Dec. 17, 2014) ......................................................................... 9

*Disney Enters., Inc. v. Vuong Tran*,
   2013 WL 1832563 (N.D. Cal. May 1, 2013) ..................................................................... 8, 10

*DSPT Int'l, Inc. v. Nahum*,
   624 F.3d 1213 (9th Cir. 2010) ........................................................................................... 11, 12

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ................................................................ 8, 10, 11, 12, 13, 14

*Geddes v. United Fin. Grp.*,
   559 F.2d 557 (9th Cir. 1977) ................................................................................................. 11

*ICON Health & Fitness Inc. v. pro-form.com*,
   2017 WL 4797794, at **7-8 (D. Ariz. Sept. 12, 2017), *report and recommendation adopted*, 2017 WL 4779216 (D. Ariz. Oct. 23, 2017) ............................................................. 9

*In re Tuli*,
   172 F.3d 707 (9th Cir. 1999) ............................................................................................... 8, 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kloepping v. Fireman's Fund*,
　1996 WL 75314 (N.D. Cal. Feb.13, 1996) ............................................................................. 14

*PepsiCo, Inc. v. Cal. Sec. Cans*,
　238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................................... 10, 12, 13, 14

*Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co.*,
　2023 WL 2815358 (N.D. Cal. Apr. 5, 2023) ................................................................... 10, 14

*TeleVideo Systems, Inc. v. Heidenthal*,
　826 F.2d 915 (9th Cir. 1987) .................................................................................................. 8

*Vera v. FlexShopper, LLC*,
　2022 WL 4472069 (N.D. Cal. Sept. 26, 2022) ...................................................................... 13

## STATUTES

15 U.S.C.
　§ 1125(d) ................................................................................................................................. 6
　§ 1125(d)(1)(A) ..................................................................................................................... 11
　§ 1125(d)(1)(B)(i) .................................................................................................................. 12
　§ 1125(d)(2)(B) ..................................................................................................................... 10
　§ 1125(d)(2)(D)(i) .................................................................................................................. 14

## OTHER AUTHORITIES

Fed. R. Civ. P.
　55(b)(2) ................................................................................................................................... 8

## I. INTRODUCTION

This is an *in rem* action for cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Plaintiff Licensing IP International S.à r.l. ("Plaintiff") owns the trademarks MY DIRTY HOBBY® and MDH® (collectively, the "MDH® Trademarks"), and the adult entertainment website located at <mydirtyhobby.com> (the "MDH Website"). Without Plaintiff's permission, certain foreign individuals (collectively, the "Registrants") registered the confusingly similar domain names <mydirtyhobby.to>, <mdh.to>, and <watchmdh.to> (collectively, the "Disputed Domain Names" or "Defendants") with the Kingdom of Tonga's domain name registrar, namely, Tonga Network Information Center a/k/a Tonic (the "Tonga Registrar"). Defendants have defaulted. *See* Dkt. No. 21. Accordingly, Plaintiff now seeks a default judgment against them, based upon the well-pleaded factual allegations in the operative First Amended Complaint (Dkt. No. 10) ("Amended Complaint"), and an order requiring the Tonga Registrar to immediately transfer the Disputed Domain Names to Plaintiff.

## II. FACTUAL BACKGROUND

### A. **Plaintiff and the MDH® Trademarks.**

Plaintiff owns the federally-registered MDH® Trademarks. *See* Amend. Compl. ¶¶ 18-19, 27 & Ex. B. Plaintiff has been using the MDH® Trademarks in commerce for many years in the field of adult entertainment, including in conjunction with the MDH Website located at the domain name <mydirtyhobby.com>, which was created in or around April 2006. *Id.* ¶¶ 15-16, 18 & Ex. B (first use in commerce dates as early as November 2014); Declaration of Marissa B. Lewis dated December 4, 2024 ("Lewis Declaration" or "Lewis Decl."), Ex. 1 (screenshot of MDH Website).[1] Through years of extensive use and promotion, Plaintiff has developed substantial goodwill in the MDH® Trademarks: the relevant consumers readily identify and associate the MDH® Trademarks with Plaintiff's high-quality adult entertainment content and websites. Amend. Compl. ¶¶ 16-17.

---

[1] Plaintiff advises the Court that the screenshot of the MDH Website attached as Exhibit 1 to the Lewis Declaration contains explicit adult content. The same is true of the screenshots of the Disputed Domain Names attached as Exhibits 5-9 of the Lewis Declaration. Relatedly, these screenshots are incorporated by reference into the Amended Complaint. *See Arroyo v. Huskies Owner LLC*, 2021 WL 2711736, at *2 (N.D. Cal. July 1, 2021) (finding "website screenshots are subject to judicial notice under the doctrine of incorporation by reference.") (citation omitted).

### B. The Disputed Domain Names.

Years after Plaintiff already had established rights in the MDH® Trademarks, the Disputed Domain Names <mydirtyhobby.to>, <mdh.to>, and <watchmdh.to> were registered with the Tonga Registrar, which is located in this judicial district. *See* Amend. Compl. ¶ 20; *see also* Lewis Decl., Exs. 2-4 (Whois information, indicating the Disputed Domain Names were created between August 2020 and August 2022). The Disputed Domain Names consist of and/or contain Plaintiff's exact MDH® Trademarks. In addition, the websites located at the Disputed Domain Names prominently feature the MDH® Trademarks and distribute the same or similar adult entertainment content as distributed by Plaintiff on the MDH Website. *See* Amend. Compl. ¶ 22; *compare* Lewis Decl., Ex. 1 *with id.*, Exs. 5-7 (screenshots of websites located at the Disputed Domain Names).

According to information provided by the Tonga Registrar, the Disputed Domain Names were registered by the Registrants, *i.e.*, three individuals with addresses outside the United States. *See* Amend. Compl. ¶¶ 6-9; Dkt. No. 20-1 at pp. 10-16 (emails from the Tonga Registrar disclosing information for the Registrants). Neither Plaintiff nor any of its affiliated entities or their predecessors-in-interest have ever authorized, consented, or otherwise permitted any of the Registrants to register the Disputed Domain Names or use the MDH® Trademarks in any way. *See* Amend. Compl. ¶ 24.

### C. Procedural History.

The procedural history of this case is set forth, in detail, in Plaintiff's recently-filed *ex parte* application for entry of default. *See* Dkt. No. 20. Most pertinent here, Plaintiff has filed and served the operative Amended Complaint. *See* Dkt. Nos. 10, 19. Neither the Registrants, nor anyone else associated with the Disputed Domain Names, have filed a responsive pleading or otherwise appeared in this action. On November 21, 2024, the Court entered a notice of default against the Disputed Domain Names. *See* Dkt. No. 21. Accordingly, Plaintiff now moves this Court to enter a default judgment and order that the Disputed Domain Names be transferred to Plaintiff immediately.

## III. LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Fed. R. Civ. P. 55(b)(2), a court may enter a default judgment against a party whom default has been entered. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (collecting cases). As a threshold matter, in order to enter a default judgment, the Court must determine that it has subject matter jurisdiction over the action and personal jurisdiction over the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In addition, "the Court must assess the adequacy of the service of process on the party against whom default judgment is requested." *Disney Enters., Inc. v. Vuong Tran*, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013) (citation and quotation marks omitted).

If the foregoing threshold requirements are met, the court then must consider whether the following factors support the entry of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In considering these factors, courts take all factual allegations in a plaintiff's complaint as true, except for those relating to damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV. THE COURT SHOULD ENTER A DEFAULT JUDGMENT

As discussed below, the threshold requirements for entry of a default judgment have been met, and all of the *Eitel* factors weigh in favor of granting default judgment in this case. Accordingly, the Court should enter a default judgment against Defendants.

### A. The Threshold Requirements for Entry of a Default Judgment are Met.

#### 1. The Court Has Subject Matter Jurisdiction.

In order to enter a default judgment, the Court must have subject matter jurisdiction over this action. *See In re Tuli*, 172 F.3d at 712. Here, "Plaintiff brings its claim under the ACPA, a federal statute. Thus, the Court has subject matter jurisdiction." *9349-9176 Quebec Inc. v.*

*manyvids.to*, 2019 WL 1095821, at *2 (N.D. Cal. Jan. 14, 2019), *report and recommendation adopted*, 2019 WL 1095795 (N.D. Cal. Feb. 12, 2019).

### 2. The Court Has *In Rem* Jurisdiction.

The Court also must have jurisdiction over Defendants. *See In re Tuli*, 172 F.3d at 712. Here, the Court has *in rem* jurisdiction over the Disputed Domain Names because they are registered with the Tonga Registrar, which is located in this judicial district. *See* Amend. Compl. ¶ 5 & Ex. A; *see also, e.g.*, *9349-9176 Quebec*, 2019 WL 1095821, at *2 (finding *in rem* jurisdiction over disputed ".to" domain name, where the plaintiff alleged that "the registrar for '.to' domain names is located … in this district").

Notably, in order to proceed under *in rem* jurisdiction, the Court must find that it lacks personal jurisdiction over the Registrants of the Disputed Domain Names, who otherwise would be the appropriate defendants in this case. *See Denso Corp. v. Domain Name denso.com*, 2014 WL 7208488, at *3 (N.D. Cal. Dec. 17, 2014) (for *in rem* jurisdiction, "the plaintiff must show that the court cannot obtain personal jurisdiction over someone who 'would have been a defendant' in an infringement or dilution suit," such as "the party who currently has the [disputed] domain name registered") (quoting 15 U.S.C. § 1125(d)(2)(A)).  It is clear on the current record that this Court lacks personal jurisdiction over the Registrants.  According to information provided by the Tonga Registrar, all of the Registrants reside outside of the United States (*i.e.*, in Austria, England, and Bosnia).  *See* Amend. Compl. ¶¶ 6-9; Dkt. No. 20-1 at pp. 10-16.  Further, Plaintiff is informed and believes that the Registrants do not own property or have any place of business in California or anywhere in the United States.  *See* Amend. Compl. ¶¶ 6-9.  "The only contact that [the Registrants] appear[] to have had with California consists [of] registering or maintaining the [Disputed Domain Names] through [the Tonga Registrar]," which "is insufficient to establish personal jurisdiction." *Denso Corp. v. Domain Name denso.com*, 2014 WL 7208488, at *3 (N.D. Cal. Dec. 17, 2014); *see also, e.g.*, *beIN Media Grp. LLC v. bein.ae*, 2019 WL 1129153, at *3 (S.D. Cal. Mar. 11, 2019) (finding no personal jurisdiction and action to proceed under *in rem* jurisdiction, where "the registrant of the [disputed] domain name reside[d] in the United Kingdom and [did] not appear to have any ongoing business activities in the United States") (citation omitted); *ICON Health &*

*Fitness Inc. v. pro-form.com*, 2017 WL 4797794, at **7-8 (D. Ariz. Sept. 12, 2017), *report and recommendation adopted*, 2017 WL 4779216 (D. Ariz. Oct. 23, 2017) (same, where the registrant of the disputed domain names resided in Ukraine and had no ongoing business activities in the United States).

### 3. Plaintiff Has Effectuated Service of Process.

The Court already has "assess[ed] the adequacy of the services of process" in this case. *Disney*, 2013 WL 1832563, at *1 (citation and quotation marks omitted). On November 21, 2024, the Court entered notices of default against the Disputed Domain Names (Dkt. No. 21), thereby impliedly finding that Defendants were adequately served with process. Plaintiff refers to its recently-filed *ex parte* application for entry of default (Dkt. No. 20) for a detailed showing that Plaintiff has effectuated service of process on Defendants in this action pursuant to the ACPA, 15 U.S.C. § 1125(d)(2)(B).

## B. All of The *Eitel* Factors Weigh In Favor of Granting a Default Judgment.

### 1. Possibility of Prejudice to Plaintiff.

The first *Eitel* factor considers "whether Plaintiff will suffer prejudice if default judgment is not entered." *9349-9176 Quebec*, 2019 WL 1095821, at *2. "Here, Plaintiff will likely be without other recourse for recovery if its motion for default judgment is not granted." *Id.* (citation omitted). Accordingly, this factor weighs in favor of default judgment. *See, e.g.*, *id.* (finding first *Eitel* factor weighed in favor of default judgment); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (same, noting the "[p]otential prejudice to [the plaintiffs] favors granting a default judgment.").

### 2. Merits of Plaintiff's Claims and Sufficiency of Amended Complaint.

The second and third *Eitel* factors "pertain to the merits of [Plaintiff's] claims and the sufficiency of Plaintiff's [Amended Complaint], *i.e.*, whether Plaintiff has stated a claim on which it may recover." *9349-9176 Quebec*, 2019 WL 1095821, at *2 (citation omitted); *see also Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co.*, 2023 WL 2815358, at *4 (N.D. Cal. Apr. 5, 2023) (noting the second and third *Eitel* factors are "often analyzed together"). In making this determination, "the factual allegations of the complaint, except those relating to the

1  amount of damages, [are] taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir.
2  1977) (collecting cases).

3        Based on the well-pleaded factual allegations of the Amended Complaint, Plaintiff's only
4  cause of action—for cybersquatting in violation of the ACPA—is meritorious and well-founded.
5  Generally, cybersquatting occurs where an individual other than the trademark owner registers a
6  domain name that is similar or identical to the protected mark and "attempts to profit from this by
7  ... using the domain name to divert business from the trademark holder to the domain name holder."
8  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (citation omitted).  To establish
9  liability under the ACPA, a plaintiff must show: (1) ownership of a valid and distinctive trademark;
10 (2) that the defendant registered, traffics in, or uses a domain name that is identical or confusingly
11 similar to that trademark; and (3) that the defendant has a bad faith intent to profit from the
12 trademark.  *See* 15 U.S.C. § 1125(d)(1)(A).  As discussed below, Plaintiff has sufficiently pleaded
13 each of these elements, and thus the second and third *Eitel* factors weigh in favor of a default
14 judgment here.

15       *First*, Plaintiff owns all rights, title, and interest in and to the MDH® Trademarks, which are
16 highly distinctive and well-known among the relevant consuming public.  *See* Amend. Compl. ¶¶
17 16-18, 27-28.  This cannot be disputed, especially considering that Plaintiff's federal registration
18 for the trademark MY DIRTY HOBBY® has become "incontestable."  *Id.* ¶¶ 18-19 & Ex. B.

19       *Second*, the Registrants registered and/or use the Disputed Domain Names, which are
20 identical or confusingly similar to Plaintiff's MDH® Trademarks.  *See* Amend. Compl. ¶¶ 20-22.
21 In making this determination under the ACPA, the Court need only engage in a facial comparison
22 of the Disputed Domain Names (*i.e.*, <mydirtyhobby.to>, <mdh.to>, and <watchmdh.to>) and
23 Plaintiff's MDH® Trademarks (*e.g.*, MY DIRTY HOBBY® and MDH®).  *Cf. Coca-Cola Co. v.*
24 *Purdy*, 382 F.3d 774, 783 (8th Cir. 2004) ("It is the challenged domain name and the plaintiff's
25 mark which are to be compared.  The inquiry under the ACPA is thus narrower than the traditional
26 multifactor likelihood of confusion test for trademark infringement.") (citations omitted); *see also*
27 *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1222 n.28 (9th Cir. 2010) (the likelihood-of-confusion
28 factors "are a poor fit in [the cybersquatting] context") (citation omitted).  Notably, the fact that the

Disputed Domain Names also contain the top-level domain ".to" and/or the word "watch" in no way detracts from the conclusion that the Disputed Domain Names are confusingly similar to the MDH® Trademarks. *See, e.g., id.* at 1222 (upholding jury verdict that "eq-Italy.com" is confusingly similar to EQ mark); *Coca-Cola Co.*, 382 F.3d at 784 (affirming district court findings that the disputed domain names were confusingly similar notwithstanding "the addition of generic terms like 'my,' 'says,' or drink' or … a top level domain suffix").

*Finally*, the Registrants acted with bad faith intent to profit from Plaintiff's MDH® Trademarks. *See* Amend. Compl. ¶¶ 23, 31. With respect to the bad faith factors listed in the ACPA, 15 U.S.C. § 1125(d)(1)(B)(i), it cannot be disputed that: (1) the Registrants have no trademark or intellectual property rights in the Disputed Domain Names and/or MDH® Trademarks; (2) the Disputed Domain Names do not consist of and/or contain the Registrants' legal name or any name commonly used to identify them; (3) the Registrants have not made any prior use of any Disputed Domain Names in connection with a *bona fide* offering of goods or services; and (4) there are no reasonable grounds to believe that the use of the Disputed Domain Names was a fair use or otherwise lawful. *See, e.g.*, *9349-9176 Quebec*, 2019 WL 1095821, at *3 (finding plaintiff "sufficiently plead[ed] facts to establish bad faith," and that the second and third *Eitel* factors weighed in favor of a default judgment).

### 3. Amount of Money at Stake.

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of [the defendant's] conduct." *9349-9176 Quebec*, 2019 WL 1095821, at *3 (citation omitted). In the Amended Complaint, Plaintiff requests non-monetary relief in the form of having ownership of the Disputed Domain Names transferred to Plaintiff, along with its reasonable attorneys' fees and costs. *See* Amend. Compl. ¶ 35. "Plaintiff's request for equitable relief is appropriate in light of the conduct alleged." *9349-9176 Quebec*, 2019 WL 1095821, at *3 (finding fourth *Eitel* factor weighed in favor of default judgment, where the plaintiff requested transfer of the disputed domain name and its reasonable attorneys' fees and costs); *PepsiCo*, 238 F. Supp. 2d at 1176-77 (same, where the plaintiffs were "not seeking monetary damages," but "only injunctive relief from the continued use of their trademarks").

### 4. Possibility of a Dispute Concerning Material Facts.

The fifth *Eitel* factor considers "the possibility of a dispute concerning material facts." *Eitel*, 782 F.2d at 1471-72. Because "all well-pleaded facts in the complaint are taken as true" at this stage, there can be "no genuine dispute of material facts [that] would preclude granting [Plaintiff's] motion." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). In any event, the material facts of this case cannot reasonably be disputed. Indeed, it is clear that Plaintiff owns valid and distinctive trademark rights in the MDH® Trademarks (Amend. Compl. ¶¶ 15-19); that the Disputed Domain Names were registered long after Plaintiff established rights in the MDH® Trademarks (*id.* ¶¶ 20; Lewis Decl., Exs. 2-4); and that the Disputed Domain Names incorporate the exact MDH® Trademarks and resolve to similarly-branded websites featuring adult entertainment content (Amend. Compl. ¶¶ 20-22; *compare* Lewis Decl., Ex. 1 *with id.*, Exs. 5-7). Accordingly, this factor weighs in favor of a default judgment. *See, e.g.*, *9349-9176 Quebec*, 2019 WL 1095821, at *3 (finding fifth *Eitel* factor weighed in favor of default judgment, because "the domain names themselves demonstrate the likelihood of confusion," "the times that each domain name was registered are easily ascertained," and "displaying [the plaintiff's] other copyrighted works on a similarly named website indicates bad faith").

### 5. Possibility of Excusable Neglect.

The sixth *Eitel* factor considers the possibility that the "default was due to excusable neglect." *Eitel*, 782 F.2d at 1471-72. "This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Vera v. FlexShopper, LLC*, 2022 WL 4472069, at *6 (N.D. Cal. Sept. 26, 2022) (citation and quotation marks omitted). As detailed in Plaintiff's prior-filed *ex parte* application for entry of default (Dkt. No. 20) and the accompanying declaration (Dkt. No. 20-1), Plaintiffs have made numerous attempts to contact the Registrants regarding this matter and properly served them with the pleadings in this case. *See* Dkt. No. 19. Although they did not respond, the Registrants likely have received actual notice of the lawsuit. For example, the Summons, Amended Complaint, and other case-related documents were hand-delivered to the residential addresses provided by the Tonga Registrar for the Disputed Domain Names <mydirtyhobby.to> and <mdh.to>. *See* Dkt. Nos. 19-1 & 19-3. Moreover,

following Plaintiff's service attempts, the Registrant of the Disputed Domain Name <watchmdh.to> redirected the site to a new domain name. *See* Lewis Decl. ¶¶ 9-12 & Exs. 8-9.[2] Accordingly, the possibility that the Registrants' default is the result of excusable neglect is remote. This factor weighs in favor of a default judgment. *See, e.g.*, *Restoration Hardware*, 2023 WL 2815358, at *6 (finding the sixth *Eitel* factor weighs in favor of a default judgment because the plaintiff "properly served" the defendants, making it "unlikely [that the defendants'] failure to appear and litigate this matter was the result of excusable neglect"); *9349-9176 Quebec*, 2019 WL 1095821, at *3 (finding sixth *Eitel* factor "weighs slightly in favor of entry of default judgment" where the plaintiff "diligently attempted to provide the registrant with actual notice by email and then by publication").

### 6. Policy for Deciding on the Merits.

The seventh and final *Eitel* factor considers the policy favoring decisions on the merits. *See Eitel*, 782 F.2d at 1471-72. Although courts prefer to decide cases on their merits, in this case, the Registrants' "failure to answer [Plaintiff's] Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Courts are allowed to terminate a case "before hearing the merits … whenever a defendant fails to defend an action." *Id.* (citing Fed. R. Civ. P. 55(a)); *accord Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. Feb.13, 1996) ("the Federal Rules … frequently permit termination of cases before the court reaches the merits … when a party fails to defend against an action"). Accordingly, the Court is not precluded from granting a default judgment here. *See, e.g.*, *Restoration Hardware*, 2023 WL 2815358, at *6 (finding a "default judgment [is] appropriate notwithstanding the policy against it" due "[the defendant's] failure to answer [the plaintiff's] complaint") (citation omitted).

## V. THE COURT SHOULD ORDER THE TRANSFER OF THE DISPUTED DOMAIN NAMES TO PLAINTIFF, ALONG WITH THE RELATED DOMAIN NAMES

The ACPA provides that a court in an *in rem* action may order the "the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(2)(D)(i). This is precisely the relief that Plaintiff seeks. *See* Amend. Compl., p. 10 (seeking "an order requiring the Tonga Registrar to

---

[2] As of the date of this filing, the Disputed Domain Name <watchmdh.to> redirects to the domain name <watchdirty.com>, which infringes Plaintiff's rights in the MDH® Trademarks and in the mark DIRTY®, for which Plaintiff owns federal registrations. *See* Lewis Decl. ¶ 13 & Exs. 10-11.

Mitchell Silberberg & Knupp LLP
20226276.3

1  transfer the Disputed Domain Names to Plaintiff immediately"). Accordingly, the Court should
2  enter a default judgment and order each of the Disputed Domain Names to be transferred to Plaintiff
3  immediately. *See, e.g.*, *9349-9176 Quebec*, 2019 WL 1095821, at *4 (granting motion for default
4  judgment and ordering transfer of disputed domain name).

5  Additionally, Plaintiff requests that the Court order the Tonga Registrar to transfer to
6  Plaintiff the related domain name <watchdirty.to> (the "Related Domain Name") and any other
7  confusingly similar ".to" domain names that are registered to the same Registrants as the Disputed
8  Domain Names. The Related Domain Name <watchdirty.to> clearly is related to the Disputed
9  Domain Name <watchmdh.to> and appears to be owned and/or controlled by the same Registrant.
10 In fact, as of the date of this filing, the Disputed Domain Name <watchmdh.to> automatically re-
11 directs to the Related Domain Name <watchdirty.to>. *See* Lewis Decl. ¶ 9, Exs. 8-9. Furthermore,
12 the website located at the Related Domain Name <watchdirty.to>: (1) is nearly identical to the
13 website previously located at the Disputed Domain Name <watchmdh.to> (*compare id.*, Ex. 8 *with*
14 *id.* Ex. 7); (2) features a banner that reads (when translated into English) "NEW DOMAIN
15 WATCHDIRTY.TO – PLEASE SAVE" (*see id.*, Ex. 9); (3) contains multiple obsolete references
16 to the Disputed Domain Name <watchdmdh.to> (*see, e.g.*, *id.*, Ex. 10); (4) utilizes the same service
17 provider as the Disputed Domain Name <watchdmdh.to> (*i.e.*, Cloudflare) for its name server
18 (*compare id.*, Ex. 11 *with id.*, Ex. 4); and (5) utilizes the same Google Analytics tag identifiers as
19 the Disputed Domain Name <watchdmdh.to>, and began utilizing such tags almost immediately
20 after the Disputed Domain Name <watchdmdh.to> stopped utilizing them (*see id.* ¶¶ 14-15, Exs.
21 12-13). Like the Disputed Domain Names, the Related Domain Name <watchdirty.to> is registered
22 with the Tonga Registrar, and continues to infringe Plaintiff's federally-registered trademark rights,
23 including in the mark DIRTY®. *See id.*, Ex. 14. Plaintiff is informed and believes that the
24 Registrant intentionally caused the Disputed Domain Name <watchmdh.to> to re-direct to the
25 Related Domain Name <watchdirty.to> after receiving notice of this lawsuit in a bad-faith attempt
26 to circumvent a judgment against it. *See id.* ¶¶ 10-11 (email, dated July 8, 2024, notifying the
27 Registrant about this lawsuit); *id.*, Ex. 7 (screenshot showing that, as of July 13, 2024, the Disputed
28 Domain Name <watchmdh.to> continued to display a website); *id.* ¶ 17, Ex. 15 (screenshot showing

that, as of August 4, 2024, the Disputed Domain Name <watchmdh.to> re-directed to the Related Domain Name <watchdirty.to>). Accordingly, in addition to ordering the Tonga Registrar to transfer the Disputed Domain Names, Plaintiff respectfully requests that the Court also order the transfer of the Related Domain Name <watchdirty.to> and any other ".to" domain names registered by the Registrants that are confusingly similar to Plaintiff's federally-registered trademarks.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Default Judgment in its entirety, enter judgment in Plaintiff's favor and against Defendants, and order the Tonga Registrar to immediately transfer the Disputed Domain Names to Plaintiff. Further, Plaintiff respectfully requests that the Court order the Tonga Registrar to immediately transfer to Plaintiff the Related Domain Name <watchdirty.to> and any other ".to" domain names registered by the Registrants that are confusingly similar to Plaintiffs' federally-registered trademarks.

DATED: December 4, 2024

MARC E. MAYER
JAMES D. BERKLEY
MARISSA B. LEWIS (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP


By: */s/ Marissa B. Lewis*
    Marissa B. Lewis
    Attorneys for Plaintiff
    Licensing IP International S.à r.l.